# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Case No. 2:18-CR-00058-1 |
| Plaintiff, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : |
| KWABENA BONSU, | : |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court on the Defendant's Motion for Compassionate Release (ECF Nos. 235–36), which the Government opposes (ECF No. 243). For the following reasons, Defendant's Motion is **DENIED.**

### I.  BACKGROUND

On November 12, 2020, Kwabena Bonsu was sentenced to 36 months of imprisonment and 3 years of supervised release for one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) following his guilty plea. (ECF No. 216). He was also ordered to pay restitution in the amount of $3,385,081.05, jointly and severally with his co-defendants. (*Id.*). He forfeited a money judgment up to the value of $103,693.47. (*Id.*). He began his term of imprisonment on February 12, 2021 after self-surrendering and is serving his prison sentence at FCI Elkton in Lisbon, OH. (ECF No. 236 at 2). Mr. Bonsu filed a motion for compassionate release *pro se* on April 26, 2021 and filed a supplement to this motion the subsequent day. (ECF Nos. 235–36). Appointed counsel indicated that she would not be filing a supplement to his *pro se* motion as she saw nothing further to be added to his arguments. (ECF No. 241). On May 17,

2021, the Government filed a response in opposition and this matter is now ripe for consideration. (ECF No. 243).

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse of discretion and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). In *United States v. Jones*, the Sixth Circuit recently clarified the mechanics of compassionate review under 18 U.S.C. § 3582 when an incarcerated person has brought a motion on his own behalf. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.* at 1102.

The *Jones* court set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at 1107–08. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* Second, a court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* at 1108. Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the

2

court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### III. LAW & ANALYSIS

#### A. Exhaustion of Administrative Remedies

When reviewing motions for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A), district courts' first step is to ask: has the movant either fully exhausted all administrative rights or have 30 days lapsed since the movant received the warden's letter denying the request. If either prong is answered in the affirmative, courts then inquire if extraordinary and compelling circumstances justify release. 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit has held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Id.* at 833.

Mr. Bonsu indicates that he submitted his request for compassionate release on March 18, 2021 to the Warden of his facility and received a response on March 23, 2021, that his request for compassionate release had been denied. (ECF No. 236 at 5). He also submitted a copy of his request to the Warden and the response received as an exhibit to this Court. (ECF No. 235-3, Ex. C). More than thirty days have passed since he received the denial from the Warden. The Government concedes that Mr. Bonsu has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A). This Court thus finds that he has satisfied the administrative exhaustion requirement and this Court will now consider the merits of his motion for compassionate release.

### B. Extraordinary and Compelling Reasons

Under the analysis set forth in *Jones*, this Court must first determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. In his motion, Mr. Bonsu argues that his preexisting health conditions and the conditions at FCI Elkton constitute extraordinary and compelling reasons for a reduction in his sentence, in light of the ongoing COVID-19 pandemic. (ECF No. 236 at 5–6). Mr. Bonsu is obese, has "liver abnormalities," prediabetes, hyperlipidemia, and breathing problems associated with allergic rhinitis. (*Id.*; ECF No. 235). He filed a copy of his BOP medical records with the supplement to his motion, which support his disclosure that he is obese and sought treatment related to his allergic rhinitis issues. (ECF No. 235-3, Ex. B). As to his facility, Mr. Bonsu argues that FCI Elkton presents a highly contagious environment for COVID-19 to spread. (ECF No. 236 at 6). He also notes that the COVID-19 protocols in place at FCI Elkton have created new barriers to accessing health services in the facility. (*Id.* at 6–7).

The Government argues that Mr. Bonsu cannot use his pre-existing health conditions as a justification for compassionate release when he has also declined the opportunity to be vaccinated against COVID-19 by the BOP. (ECF No. 243 at 4). The Government argues that vaccine refusal "precludes eligibility for compassionate release." (*Id.* at 5). It notes that he was offered the Pfizer COVID vaccine, which is 95 percent effective in preventing COVID-19 infection, including in participants with high-risk medical comorbidities. (*Id.*). Mr. Bonsu contends that he was offered that Moderna vaccine and declined it because he was concerned about blood clots or other life-threatening side effects. (ECF No. 236 at 7). He emphasizes that

4

health providers at FCI Elkton could not answer his questions about vaccine side effects and that he has seen other incarcerated people experience chronic and severe side effects after receiving their vaccines. (*Id.* at 7–8). Mr. Bonsu challenges that he should not be penalized for wanting to wait for more data to make an informed decision about getting vaccinated and what vaccine would be best for him. (*Id.* at 8). In response, the Government suggests that Mr. Bonsu cannot have it both ways, so to speak, in that he cannot rely on the CDC to argue he is at risk for severe illness but also reject the CDC's vaccination recommendations. (ECF No. 243 at 6). The Government further emphasizes that there is "overwhelming scientific consensus" as to vaccine efficacy. (*Id.*).

As an initial matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented and FCI Elkton has not been left untouched by this illness.[1] Nine people have died from COVID-19 while imprisoned at FCI Elkton.[2] COVID-19 also puts individuals who are obese, like Mr. Bonsu, at particular risk. The CDC has recognized that individuals who are overweight, obese, or severely obese may be more likely to get severely ill or die from COVID-19.[3] The CDC has also acknowledged that the risk of severe illness increases sharply with elevated BMI.[4] This Court also acknowledges that the CDC declares that the COVID-19 vaccines are safe and effective and recommends that individuals get vaccinated "as soon as possible."[5] The CDC has noted that blood clotting has only been observed

---

[1] *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/, last accessed July 9, 2021 at 2:00 p.m. (showing number of individuals who have recovered from COVID-19 while incarcerated at FCI Elkton).
[2] *Id.*
[3] *See* CDC, *Medical Conditions* (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[4] *Id.*
[5] CDC, *Safety of COVID-19 Vaccines* (July 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html.

after administration of the J&J/Janssen COVID-19 vaccination and that women younger than 50 years old are most at risk for this rare adverse event.[6]

This Court finds that Mr. Bonsu's vaccine refusal will preclude his request for compassionate release. While this Court respects Mr. Bonsu's concerns about the vaccine and his decision-making process, he presents no specific reasons as to why the COVID-19 vaccine presents a particular risk to him that outweighs the benefits of its protection. At this time, the CDC does not recommend against any adults receiving the COVID-19 vaccine and this Court will continue to defer to the expertise of the CDC, just as it does when determining which medical conditions may put an individual at a higher risk of COVID-19. This Court also notes that vaccine refusal may not preclude compassionate release in every case, but finds that vaccine refusal undercuts this Defendant's arguments about his health conditions presenting extraordinary and compelling reasons. Accordingly, this Court finds that Mr. Bonsu has not presented "extraordinary and compelling reasons" within the meaning of the First Step Act, and his Motion for Compassionate Release (ECF Nos. 235–36) is hereby **DENIED**.

### C. Section 3553 Sentencing Factors Analysis

Even if Mr. Bonsu had presented extraordinary and compelling reasons supporting compassionate release, this Court would have denied his motion based on its assessment of the § 3553(a) factors. When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. A court does not need "specifically [to] articulat[e]" every single § 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, this record will constitute both the original sentencing

---

[6] *Id.*

proceeding and the compassionate release decision. *Id.* Section 3553(a) instructs a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
>
> (5) any pertinent policy statement ... issued by the Sentencing Commission ...;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mr. Bonsu argues that the sentencing factors do not militate against a reduction in sentence. He notes that his offense conduct was non-violent, that he has no prior criminal convictions, and has behaved well while incarcerated. (ECF No. 236 at 8). If released, he would plan to reside with his brother and seek employment with Doordash, a food delivery service. (*Id.* at 9). In opposition, the Government notes that Mr. Bonsu is subject to an ICE detainer. (ECF

No. 243 at 7). The Government also argues that a reduction in sentence would not fully address the purposes of sentencing. (*Id.* at 8–10).

A detainer "serves to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 CFR § 287.7(a). The Government argues that there is "no guarantee" that he would be released from immigration detention while DHS pursues removal proceedings. (*Id.* at 7–8). Courts have taken divergent approaches when assessing the impact of an ICE detainer on a request for compassionate release. This Court has previously found that an ICE detainer alone will not preclude a motion for compassionate release where it is not virtually certain that an individual will remain detained for the duration of removal proeecdings. *See United States v. Hamidu*, No. 2:18-CR-00058-6, 2021 WL 2808721, at *5 (S.D. Ohio July 6, 2021). The Government does not argue that Mr. Bonsu's immigration detention would be virtually certain, but rather "likely." (ECF No. 243 at 7). This Court also observes that Mr. Bonsu remained compliant while under pretrial supervision. (ECF No. 236 at 9). As such, this Court does not find that Mr. Bonsu's ICE detainer precludes his request for compassionate release.

Rather, this Court finds that compassionate release would undermine the statutory purposes of sentencing. Mr. Bonsu was sentenced to 36 months of incarceration, followed by 3 years of supervised release, after he pled guilty to one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (ECF No. 216). Mr. Bonsu was identified as an organizer and leader of the overall money laundering scheme, who recruited others to join the conspiracy. (ECF No. 243 at 9 (citing PSR ¶¶ 29, 59–61). He received a sentence below the advisory guidelines range. He was also ordered to pay restitution in the amount of

8

$3,385,081.05, jointly and severally with his co-defendants. (*Id.*). He forfeited a money judgment up to the value of $103,693.47. (*Id.*). This sentence was imposed to reflect the seriousness of the offense and promote respect for the law, as well as to afford adequate deterrence and to protect the public from further crimes of the Defendant. Mr. Bonsu began his term of imprisonment on February 12, 2021 after self-surrendering and is serving his prison sentence at FCI Elkton in Lisbon, OH. (ECF No. 236 at 2). Thus, he has served only five months of his total sentence and sought compassionate release only one month into his term of imprisonment. It is unclear whether he has made any payments toward his restitution obligation yet.

In imposing a sentence, a sentencing court's task is to "'impose a sentence sufficient, but not greater than necessary, to comply with purposes' of the statutory sentencing scheme." *United States v. Presley*, 547 F.3d 625, 630–31 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). This Court finds that Defendant's request would greatly undermine the statutory purposes of sentencing. Mr. Bonsu has only served a small fraction of his sentence, which was already significantly below the advisory guidelines. Victims of this scheme suffered serious financial consequences, with approximately suffered $5,026,402.60 in losses. *See Hamidu*, 2021 WL 2808721, at *5. Mr. Bonsu's sentence serves an important deterrent purpose to other would-be romance fraudsters, in this district and elsewhere in the United States. Based on Mr. Bonsu's decision to decline a safe and effective prophylactic against COVID-19 and the fact that compassionate release would contravene the statutory purpose of Mr. Bonsu's original sentence, this Court declines to grant compassionate release at this time. Mr. Bonsu's sentence as imposed reflects the seriousness of his offense and his personal culpability. This Court therefore finds that

the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against a sentence reduction.

### D. CONCLUSION

For these reasons, Mr. Bonsu's Motion for Compassionate Release (ECF Nos. 235–36) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 22, 2021**