IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | Case No. 2:18-cr-00058-ALM-1 |
| v. | : | Chief Judge Algenon L. Marbley |
| KWABENA BONSU, | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter is before the Court on Defendant Kwabena Bonsu's Second Motion for Compassionate Release. (ECF Nos. 262, 265) and his supplement thereto (ECF No. 271). For the reasons that follow, Defendant's Motion is **DENIED**.

**I. BACKGROUND**

On November 12, 2020, Mr. Bonsu was sentenced to thirty-six (36) months imprisonment and a three-year term of supervised release for one count of Conspiracy to Commit Money Laundering Contrary to 18 U.S.C. 1956(h). (ECF No. 216). He was also ordered to pay restitution in the amount of $3,385,081.05, jointly and severally with his co-defendants, and forfeited a money judgment up to the value of $103,693.47. (*Id*.). Mr. Bonsu began his term of imprisonment on February 12, 2021, after self-surrendering and is serving his prison sentence at FCI Elkton in Lisbon, OH. (ECF No. 236 at 2). His scheduled release date is August 3, 2023.

On April 26, 2021, Mr. Bonsu filed a *pro se* Motion for Compassionate Release and a Supplement to his motion the following day (ECF Nos. 235, 236). On July 22, 2021, the Court denied Mr. Bonsu's motion, holding that he failed to present extraordinary and compelling reasons

1

under § 3582(c)(1)(A), because he refused the Covid-19 vaccine and regardless, release was not warranted in light of the 18 U.S.C. § 3553(a) factors. (ECF No. 246)

On January 13, 2022, Mr. Bonsu filed a second *pro se* Motion for Compassionate Release (ECF No. 262) and a Supplement thereto on January 28,2022 (ECF No. 265). Additionally, pursuant to this Court's General Order, Mr. Bonsu's appointed counsel filed a second supplement to Defendant's motion on February 22, 2022. (ECF No. 271).

In the latest compassionate release motion, Mr. Bonsu argues that his obesity and other medical conditions put him at a higher risk for contracting COVID-19. (ECF No. 262 at 2). These conditions include being prediabetic, having a liver condition, stomach ulcer issues and sinus problems. (ECF No. 271 at 3). Mr. Bonsu also list good behavior, participation in rehabilitation programs, and remorse for his actions as factors the court should weigh when ruling on his motion. (ECF No. 262 at 2–4).

The Government objects to Mr. Bonsu's request, arguing his incarceration during the Covid-19 pandemic does not present an "extraordinary and compelling reason" for sentence reduction, because he has received proper vaccination since his incarceration. (ECF No. 272 at 3). The Government also argues that a reduction in his sentence would fail to fulfill the purpose of the sentencing. (*Id.*).

## II.  APPLICABLE LAW

Pursuant to 18 U.S.C. § 3582(c), a sentencing court "may reduce the term of imprisonment" of a defendant who has exhausted administrative rights and who shows "extraordinary and compelling reasons [to] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). This type of sentence reduction is known more commonly as "compassionate release." A district court's grant

or denial is discretionary, though the court must "supply specific factual reasons for [its] compassionate release decisions." *United States v. Jones*, 980 F.3d 1098, 1101–02 (6th Cir. 2020).

In *Jones*, the Sixth Circuit set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at 1107–08. After clearing the threshold requirement of exhaustion, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the analysis proceeds as follows:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). . . . At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107–08 (alterations original).

Each step is a mandatory prerequisite to attaining compassionate release, so a defendant's failure to satisfy any will compel denial of the motion. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. Of course, in granting a compassionate-release motion, district courts must address all three steps." (internal citations omitted)).

### III. ANALYSIS

#### A. Administrative Exhaustion

Administrative exhaustion is a threshold requirement in any motion for compassionate release. This condition is satisfied when a defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion on the defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden

3

of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that this requirement is not jurisdictional, but rather "a claim-processing rule" that "binds the courts only when properly asserted and not forfeited." *Id*. at 833.

Here, the Government concedes that Mr. Bonsu has exhausted his administrative remedies as thirty (30) days have passed from the receipt of such a request by the warden of FCI Elkton. (ECF No. at 3). A such, the Court may begin the three-step inquiry in *Jones* and determine whether Defendant has shown "extraordinary and compelling reasons" for a sentence reduction.

### B. Extraordinary and Compelling Reasons

Defendant generally cites the COVID-19 pandemic as providing the "extraordinary and compelling reasons" for compassionate release. (ECF No. 262 at 2–3). This topic has generated extensive discussion within the Circuit, and answers have evolved with the course of the pandemic. Before vaccines became widely available, this Court found, like many others, that the heightened risk of rapid transmission in prison facilities could constitute an "extraordinary and compelling" circumstance for inmates whose age or health left them particularly vulnerable to severe illness. *See, e.g.*, *United States v. Crawford*, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (granting compassionate release to older inmate with diabetes and high blood pressure); *United States v. Glassburn*, 2020 WL 5366113, at *2 (S.D. Ohio Sept. 8, 2020) (finding inmate's chronic obstructive pulmonary disease ("COPD") was an "extraordinary and compelling" reason, but denying compassionate release because inmate would pose a danger to the community).

More recently, however, the Sixth Circuit has narrowed the set of circumstances where risks associated with COVID-19 may be considered "extraordinary and compelling reasons." Noting the widespread availability of vaccines by mid-2021, the Sixth Circuit wrote that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the

4

COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction," though the court did not foreclose relief for "a prisoner who is 'unable to receive or benefit from a vaccine.'" *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)); *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (citing *Lemons* and affirming district court's denial of compassionate release to a fully vaccinated inmate). In January 2022, the Sixth Circuit ruled that a defendant's comorbidities would not establish "extraordinary or compelling reasons" where they "existed at the time of sentencing" and the defendant "offered no evidence as to how the[] conditions have worsened" since then. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). The court also reiterated that given the availability of COVID-19 vaccines, the pandemic itself would not be considered an "extraordinary and compelling" reason, "absent extenuating circumstances." *Id.* (citing *Lemons*, 15 F.4th at 751).

While these decisions have not ended the availability of compassionate release due to COVID-19, they have narrowed it significantly. To summarize the current state of Sixth Circuit law, any defendant who was offered the vaccine would have to show that he was unable to receive or benefit from it. *See Lemons*, 15 F.4th at 751. Such cases might include a defendant whose medical condition makes vaccination truly unsafe, or the emergence of new viral strains that are highly vaccine resistant. Additionally, a defendant alleging risk due to comorbidities would have to show new developments that were not before the court at the time of sentencing. *See McKinnie*, 24 F.4th at 588. In other words, the condition must have begun or worsened during the term of imprisonment.

Defendant Bonsu can satisfy neither requirement. First, Defendant acknowledges that he has received the vaccine since his incarceration. (ECF No. 262 at 2). Vaccines have proven effective at preventing severe illness and death from the delta (and now omicron) strains.[1] The risk of illness is mitigated further by the availability of vaccine boosters,[2] including in the Bureau of Prisons.[3]

Second, Defendant does not state how his personal risk factors differ from his condition at sentencing. Assuming these risk factors were pre-existing, the Court notes that it sentenced Defendant several months into the pandemic, when the risks to incarcerated persons were generally known. Although Defendant has reported in his motion that the condition of his sinuses continue to deteriorate during incarceration, he has not clearly demonstrated how these personal risk factors substantially differ from their condition at sentencing warranting an "extraordinary or compelling reason" for compassionate release. (ECF No. 262 at 3).

Besides COVID-19 and prior health conditions Mr. Bonsu offers other "extraordinary and compelling reasons" for compassionate release. Defendant completed the Non-Residential Drug Abuse Program on September 1, 2021as well as parenting, vocational and personal wellness classes. (*Id*. at 2). Defendant argues participation in these self-wellness efforts serves as a "compelling reason for sentence reduction" (*Id*.).

The former is foreclosed by *McKinnie*: "Rehabilitation, for one, is not by itself extraordinary and compelling." 24 F.4th at 588 (citing 28 U.S.C. § 994(t) and *United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021)). The latter recasts arguments that were presented to the

---

[1] *Do COVID-19 vaccines protect against the variants?*, Mayo Clinic (Mar. 4, 2022), https://www.mayoclinic.org/coronavirus-covid-19/covid-variant-vaccine (accessed Apr. 12, 2022).
[2] *COVID-19 Vaccine Boosters*, Centers for Disease Control & Prevention (Apr. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (accessed Apr. 12, 2022)
[3] *COVID-19 Vaccine Implementation*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (accessed Apr. 12, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance.").

Court at sentencing and thus "are not new developments" that might warrant a sentence reduction. *McKinnie*, 24 F.4th at 588.

Therefore, the Court finds that Defendant has not presented "extraordinary and compelling reasons" to justify compassionate release, and it **DENIES** his Motion on that basis.

### C. Applicable Policy Statements

In *Jones*, the Sixth Circuit clarified that "in cases where incarcerated persons file their own motions in district court for compassionate release," as opposed to the Bureau of Prisons moving on the person's behalf, the analysis of applicable policy statements changes. Specifically, where the motion is filed directly by an incarcerated person, U.S.S.G. § 1B1.13 (giving criteria for "extraordinary and compelling") is no longer considered an "applicable" policy statement. 930 F.3d at 1101. Accordingly, *Jones* instructs that courts "may skip step two" in those instances "and have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id*. at 1111. Because Defendant brings this Motion on his own behalf, the Court need not refer to the policy statement.

### D. Sentencing Factors

This brings the Court to the final step of the *Jones* framework. Because the Court fully considered said factors when it imposed its sentence, and because the mandatory element of "extraordinary and compelling reasons" is lacking, the Court terminates its inquiry without reaching this third step of analysis. *Cf. Traylor*, 16 F.4th at 487 ("[B]ecause the district court determined that there was no extraordinary and compelling reason to grant Bonsu's motion, it also did not abuse its discretion by denying the motion without addressing whether the 18 U.S.C. § 3553(a) factors support a sentence reduction.").

## IV.  CONCLUSION

For the reasons thus stated, Defendant's Motion for Compassionate Release (ECF No. 262) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 6, 2022**